BOYNTON & MOSELEY v. MORRILL GILMAN.

*Running Stream.    Action on the Case for disturbing a Water Right.*

Where an action is brought for diverting the sources of a running stream, which are on the land of a third party, who allowed the defendant to lay an aqueduct to them, the court charged the jury : "That if there was a brook, that had been accustomed to flow from the swamps on the land of Rice, through or upon the lands of others, and such brook was in character, permanent and constant, in usual and ordinary seasons, then Rice had no right to divert the water from such stream, or diminish the quantity of water accustomed to run in the channel of such stream, except such as might be incident to the proper husbandry of such farm.  But if the swamp or marsh on Rice's land was made by water oozing from the surrounding hills, which generally was wholly absorbed by the marsh, and that water only flowed from the basin or marsh, in times of excessive rains, or melting snow, then the plaintiffs would have no right of action against Rice, or those acting under him, for draining the water from the swamp in any proper manner, and would have no claim for nominal damages." *Held*, no error.

THIS was an action on the case for disturbing a water right.

Plea, the general issue.    Trial by jury ; and verdict for defendant ; September Term, 1878, REDFIELD, J., presiding.

The plaintiffs' evidence tended to show, that more than sixty years ago, there was a brook or watercourse, formed from springs and filtration and surface water, · on the land of Joseph C. Rice, which collected the water in a basin on said Rice's land in Northfield, forming swampy ground of two or three acres, and the water standing on the surface of some portion of said swampy grounds, and the brook or watercourse flowed from this swampy ground by the only outlet, towards the East, forming a channel and brook or watercourse, and flowed on the surface in a well-defined channel, across the land of the said Rice, to and across the land of the plaintiffs, and from thence finding its outlet into Dog River ; and for more than twenty years was not known to be dry or to fail in its flow of water, to and across the plaintiffs' premises, described in the plaintiffs' declaration.

And the plaintiffs, more than ten years·ago, erected their slaughter-house, as described in their declaration, and used the water

2

of this brook or watercourse, for their hogs, cattle and sheep, and the same was of great value to their business.

For some years past the flow of water in said brook has diminished at some seasons of the year, and for a few days at a time ceased to flow, but left puddles standing on plaintiffs' premises, which were of some benefit to plaintiffs' swine to drink and wallow in.

That the defendant, a few months before this suit was brought, purchased by deed of said Rice, the right to take water as by said deed, and erected a large reservoir, holding several hundred barrels of water, and laid pipes to the springs, which supplied and formed a part of said brook or watercourse, and dug wells and laid pipes to the same, and by means of pipes to said springs and wells, conducted the water from the same to his reservoir, and by means of an aqueduct and pipes, conducted the water from his said reservoir across the land of said Rice, and other lands to his house in the village, and conducted the water to four or five other houses in the Depot Village, and sold or rented said streams of water for family uses.

The plaintiffs claimed, and the evidence tended to show, that this water, so taken by defendant, would have flowed down to, and across the plaintiffs' premises aforesaid, in said brook or watercourse, and it could not have flowed anywhere else, except in the channel of said brook, and plaintiffs claimed that the defendant had no right to divert said flow of water, or deprive plaintiffs of the use of the same; and for such diversion of said water this suit is brought.

It was also claimed by the plaintiffs that since the defendant had built his reservoir, and laid the pipes to the same, and conducted the water from said reservoir in his pipes, the flow of water had diminished, and for months had wholly ceased to flow to plaintiffs' premises; and that Rice could not give defendant authority to take the water.

The plaintiffs claimed, and requested the court to charge the jury, that the taking of the water by the defendant, as set forth and proven, was an invasion of the plaintiffs' right, for which the defendant would be liable, at least, for nominal damages, and

such further damages as the plaintiffs had sustained to the time of bringing of this action; that the plaintiffs had the right at all times to have the water taken by defendant to flow to them in its natural channel.

The plaintiffs further requested the court to charge the jury, that if the defendant by digging his ditches, laying pipes, sinking wells, building his reservoir and diverting the water thence, as the testimony tended to show, had so disturbed the flow of water in said brook or water-course, as to diminish the flow of water to the plaintiffs' premises, at any season of the year, or if the water in the brook or water-course would continue to flow longer, and be dry in seasons of drouth, for a shorter period, if the water taken by defendant had not been so taken, then the defendant would be liable for an invasion of the plaintiffs' right, and the verdict would be for the plaintiffs.

The court declined to charge as above requested, but charged the jury as follows:

The defendant's testimony tended to prove that there was no brook, or flowing stream of water, where claimed by the plaintiffs, but that the surplus water, caused by melting snow and excessive rains, had been accustomed to find an outlet in that direction, near plaintiffs' slaughter-house to Dog River.

That there was no marked channel or banks showing the bed of the brook.

### CHARGE.

The court charged the jury that if there was a brook that had been accustomed to flow from the swamps on the land of Rice, through or upon the land of others, and such brook was in character, permanent and constant, in usual and ordinary seasons, then Rice had no right to divert the water from such stream, or diminish the quantity of water accustomed to run in the channel of such stream, except such as might be incident to the proper husbandry of such farm.   But if the swamp or marsh on Rice's land was made by water oozing from the surrounding hills (which some of the witnesses called little springs), which generally was wholly absorbed by the marsh, and that water only flowed from this basin or marsh, in times of excessive rains, or of melting snow, then the plaintiffs would have no right of action against Rice, or those acting under him, for draining the water from said

swamps, in any proper manner, and would have no claim for nominal damages.

He (defendant) went to Mr. Rice to get the right to dig a channel across his lots. Mr. Rice said, "I will give you the right, but I want some of the water." A trade resulted. He might go, and convey the water to a common reservoir, Mr. Rice to pay his proportion of the expense of getting and conveying the water, and to have a share of it.

What he (defendant) did, was in sinking these several wells ; and counsel agree in argument, that most of the water comes from the well, that defendant calls the Emily spring, near by. The plaintiffs claim that substantially all comes from the Emily spring. That is a place on the margin of this swamp, near by it, on the land of Rice, and so as to the well : whatever water came from that well passed into the swamp, and contributed to make it what it was, contributed to the extent the water ran in, to swell and make part of the brook. When there was water made by the rains, and this swamp. was covered by flowage, of course, then there was more of it ; and this act of defendant contributed to some extent to make this brook run dry.

The plaintiffs excepted.

The charge in all other respects was satisfactory.

The court submitted two questions in writing to the jury, both of which were answered by the jury in the negative. The jury returned a general verdict for the defendant. 1st, " Was there, at the time and place alleged in the declaration, an ancient running stream of water, in character constant and permanent, as contradistinguished from a channel, for the escape of surplus water of flood time, caused by excessive rains or melting snows ?" Ans. " No."

2d, " Have the acts of the defendant, as stated in the plaintiffs' declaration and proved by evidence, caused an injury to the plaintiffs, by depriving them of the use of the water in said brook, at their said premises ?" Ans. " No."

Exceptions allowed, subject to amendment. Execution stayed and cause passed to the Supreme Court.

*H. Carpenter* and *Geo. M. Fisk*, for plaintiffs.

It is conceded that the water which the defendant has brought to his reservoir, or the major part, comes from the " Emily

Spring " on Rice's land, and that this water, if not diverted, would have flowed into the swamp and helped swell the amount of water in the brook, in " times of heavy rains and melting snows." And it follows, that the water from this spring helped to eke out the flow of water in the brook longer than it would have done, in seasons of drouth, if not diverted away from the brook.

This being so, the plaintiffs were entitled to the instructions asked, and for nominal damages. *Dickinson et al.* v. *Grand Junction Canal Co.* 9 Eng. Law & Eq. Rep. 513 ; *Chatfield* v. *Wilson*, 27 Vt. 670.

A watercourse does not depend upon the flow of water to be "constant and permanent." Angell on Watercourses, s. 4 ; *Gillett* v. *Johnson*, 30 Conn. 180 ; *Earl* v. *DeHart*, 1 Beasley (N. J.) 280.

The charge had a tendency to mislead the jury. The court told the jury, that this defendant would have the same right to that water that Rice had. This swamp or marshy ground and the springs feeding the same, were all on Rice's land. This was error. This defendant takes the water from the outlet of the marsh, and the water that feeds the marsh, and carries it by and away from the plaintiffs, he being a stranger to the soil. Rice's right is incident to the soil, and is confined to the uses of his farm, which are called NATURAL RIGHTS.

The defendant is a stranger to these rights, and is a wrong doer. To prevent this wrong doing from ripening into a right, by user, this action is brought. Angell on Watercourses s. 4 ; 30 Conn. 180 ; 1 Beasley 280.

These plaintiffs, prior to the defendant's taking the water, had built a slaughter-house and were engaged in the business of slaughtering cattle. They have been deprived of water they had a right to have flow to them as against this defendant. Even if this brook was produced by " excessive rains or melting snows," it having a NATURAL OUTLET, and could escape to Dog River in no other place, which defendant concedes, and that outlet being across the plaintiffs' premises, which is conceded, the plaintiffs had a right to have the water run in this channel, and it thereby

becomes a WATER-COURSE in law, and this action will lie against the defendant for disturbing this watercourse. *Earl* v. *De Hart*, 1 Beasley 280 ; *Gillett* v. *Johnson*, 30 Conn. 180.

*James N. Johnson* and *Frank Plumley*, for the defendant.

1. This question involves the consideration of the right of the owner of real estate to the water in and of the soil. " For what the defendant did was to sink wells " and gather what by filtration and percolation he could, and conduct the same by pipes to his reservoir. He took no part of a running stream. Further : he took no part (as the 1st special verdict shows) of *what ever became a running stream.*

The right of the owner of the soil to the water which is *in it* is absolute ; and concerning subterranean waters " combined with the earth or passing through it by percolation, filtration, or chemical attraction, " as between adjacent owners of real estate there are no correlative rights. *Chatfield* v. *Wilson*, 28 Vt. 49 ; *Harwood* v. *Benton & Jones*, 32 Vt. 724 ; *Ellis* v. *Duncan*, 21 Barb. (N. Y.) 230 ; *Wadsworth* v. *Tillotson*, 20 Conn. 533 ; *Stein* v. *Burden*, 29 Ala. 127 ; *Bliss* v. *Greeley*, 45 N. Y. 671 ; *Hougan* v. *Milwaukee & St. Paul Railway Co.* 35 Iowa, 558 ; *Buffum* v. *Harris*, 5 R. I. 253 ; *Weston* v. *Alden*, 8 Mass. 136 ; Washb. Ease. and Serv. 440 to 457.

2. The plaintiffs cannot here claim that they have been injured in their right to the use of water in a surface stream flowing in its natural channel, for the special verdicts expressly negative such a claim. *Chatfield* v. *Wilson*, 28 Vt. 49 ; *Bliss* v. *Greeley*, 45 N. Y. 671 ; *Broadbent* v. *Ramsbotham*, 34 Eng. Law & Eq. 553.

3. The right of the owner of the soil being absolute as to all the water in it, it follows logically and necessarily that he personally may do with it as he pleases, or he may delegate that right to another.

For it is not a question of reasonable *use*, but rather a question of *absolute dominion and ownership*, subject to no interference on the part of adjacent owners. 34 Eng. Law & Eq. 553.

The opinion of the court was delivered by

. BARRETT, J.   The charge was adapted to the case which the plaintiffs' evidence maintained, as encountered by the evidence of the defendant, viz : that for more than sixty years there had been a brook or watercourse formed upon, and flowing through, the land of Rice, to and through the land of the plaintiffs, which for more than twenty years was not known to be dry or to fail in its flow of water ; that for some years past the water in said brook has diminished at some seasons of the year, and for a few days at a time ceased to flow, but left puddles standing on plaintiffs' premises, which were of some benefit to plaintiffs' swine.

This is just what is meant by " a brook in character permanent and constant in usual and ordinary seasons." The expression of the charge was designed to respond in substance what the plaintiffs had undertaken to show by their evidence.   And the charge accorded to the plaintiffs the right they claimed, if the jury should find the facts to be as plaintiffs claimed.   This aspect of the case, in behalf of the plaintiffs, was set over against the other aspects which were presented by the evidence, and claim of the defendant, "that there was no brook or flowing stream of water, but that surplus water caused by melting snow and excessive rains, had been accustomed to find an outlet in that direction."   The charge in this respect, put the plaintiffs' right to recover upon the very ground on which they put it, viz : that there was a running stream of water formed by water springing from the ground on the lands of Rice.   The jury were told in substance, if that was not so, and that water only flowed from said basin or marsh in times of excessive rains or melting snow, then the plaintiffs would have no right of action in this case.   The jury found against the plaintiffs, as to the essential fact on which they based their claim in their declaration, and by their evidence.   This relieves the case from any need of discussing the subject of the rights of riparian owners in reference to the water of springs and swamps on the lands of others, which feed the stream in which they claim the right.   We are not disposed to volunteer a discussion of that subject when not necessary to an exposition of the grounds of our decision.   That finding of the jury precludes the plaintiffs from

raising any question as to the disposition, or use Mr. Rice or the defendant makes of the water of the springs or swamp on Mr. Rice's land, as shown by the evidence in this case.

The judgment is affirmed.